STATE of Missouri, Appellant,

v.

Patrick M. MILLIORN, Respondent.

No. 72270.

Supreme Court of Missouri,
En Banc.

July 31, 1990.
Rehearing Denied Sept. 11, 1990.

Weldon W. Perry, Jr., Pros. Atty., Lexington, for appellant.

James D. Worthington, Lexington, for respondent.

William L. Webster, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for amicus curiae.

ROBERTSON, Judge.

This case began as a routine traffic stop. During its course, Trooper James Wingo of the Missouri Highway Patrol discovered fifteen plastic bags of unprocessed, raw marijuana in the camper shell of a pickup truck operated by respondent, Patrick Milliorn. In the criminal proceeding that followed, Milliorn moved to suppress the marijuana, a sum certain of money in United States currency, and the prescription medications found on his person; the trial court sustained the motion to suppress the marijuana, but overruled the motion to suppress the currency and the prescription medication. The State filed its interlocutory appeal. Section 547.200.1, RSMo 1986. The Court of Appeals, Western District,

affirmed. We granted transfer to consider the applicability of the inevitable discovery exception to the Fourth Amendment warrant requirement in the context of an inventory search. We have jurisdiction. Mo. Const. art. V, § 10. Affirmed.

I.

On March 21, 1989, Trooper Wingo patrolled Interstate 70 near the Lafayette–Saline County line. He testified that as he proceeded west on the interstate, his radar equipment detected an eastbound pickup truck travelling sixty-nine miles per hour, in violation of the posted sixty-five mile per hour speed limit.

The trooper reversed his direction, stopped Milliorn and asked to see Milliorn's operator's license. In the process of issuing Milliorn a warning for violating the speed limit, Wingo conducted a routine computer check of Milliorn's Colorado operator's license via radio and discovered that Colorado had suspended Milliorn's operator's license. Wingo arrested Milliorn for driving without a valid operator's license; registration papers for the vehicle showed that a Texas resident, not Milliorn, owned the truck and that a different license plate number than that displayed on the truck had been assigned to the truck.

Incident to this arrest, the trooper conducted a pat down search of Milliorn's person. This search uncovered an unmarked, brown bottle containing various controlled medications. Wingo informed Milliorn of his arrest for carrying a controlled substance outside its original container.[1] Milliorn volunteered that the prescriptions for the pills could be found in the passenger compartment of the pickup.

Wingo began a search of the pickup cab. While in the truck, out of the wind, Wingo testified that he smelled the odor of raw marijuana for the first time. The cab of the pickup and the camper shell were separated by an air space; each bore a sealed window preventing access from the cab to the pickup bed. The camper shell windows were virtually opaque and prevented visual

---

1. Section 195.110, RSMo 1986.

inspection of any cargo. Taking keys from the ignition, Trooper Wingo unlocked the camper shell and discovered the marijuana.

Milliorn moved to suppress a sum certain of money in United States currency, the prescription medications found on his person and the marijuana found in the enclosed camper shell. The trial court granted that portion of the motion to suppress referring to the marijuana, but denied the other relief requested in the motion.

## II.

### A.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

■ One broad exception to the warrant requirement focuses on searches of automobiles. Generally, law enforcement personnel may conduct a warrantless search of a vehicle and seize contraband found if (1) there is probable cause to believe that the vehicle contains contraband and (2) exigent circumstances necessitate the search. *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct.1975, 1981, 26 L.Ed.2d 419 (1970). As a practical matter, exigent circumstances exist whenever an automobile is involved; the mere possibility that the vehicle can be moved is generally sufficient justification for a warrantless search. *Cady v. Dombrowski*, 413 U.S. 433, 441–42, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973); *United States v. Hall*, 716 F.2d 826, 829–30 (11th Cir.1983); *cert. denied*, 467 U.S. 1251, 104 S.Ct. 3534, 82 L.Ed.2d 840 (1984); *United States v. Bagley*, 772 F.2d 482, 491 (9th Cir.1985), *cert. denied*, 475 U.S. 1023, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986).

Thus, the critical inquiry here is whether, under the totality of circumstances, Trooper Wingo had probable cause to believe the vehicle contained contraband. Said another way, the relevant question is: if Trooper Wingo had presented this factual scenario to a neutral magistrate, would these facts have been sufficient to support the issuance of a search warrant?

■ In an automobile context, probable cause to search exists "when the facts and circumstances would lead a reasonably prudent [person] to believe that the vehicle contains contraband." *United States v. Clark*, 559 F.2d 420, 424 (5th Cir.), *cert. denied*, 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977). Reduced to its simplest formulation, probable cause requires no more than a reasonable belief that it is more probable than not that the vehicle contains illegal property. *See Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (probable cause does not require a showing that an officer's belief as to the existence of contraband is correct, only a practical, nontechnical probability that contraband may be found).

### B.

■ The meaning of "probable cause" is a legal issue; its existence is a factual question, determined here by the trial court upon a presentation of the facts apparent to the trooper at the time he made the decision to search the camper shell. "[T]he probable-cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers." *United States v. Ross*, 456 U.S. 798, 808, 102 S.Ct. 2157, 2164, 72 L.Ed.2d 572 (1982).

■ The trial court is afforded the luxury of cool deliberation—an advantage generally unavailable to persons charged with actual enforcement of the law. Nevertheless, we review the trial court's decision on appeal under an abuse of discretion standard. Only if the trial court's judgment is clearly erroneous will an appellate court reverse. This standard of review gives appropriate deference to the trial court's ability to weigh the credibility of the wit-

nesses, and acknowledges the inability of an appellate court to determine credibility from the lifeless pages of a record. Thus, if the trial court's ruling is plausible in light of the record viewed in its entirety, this Court "may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *State v. Antwine*, 743 S.W.2d 51, 66 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), *quoting Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1984).

## C.

In this case, the trial court entered neither findings of fact nor conclusions of law. The record and order show that the trial court apparently did not believe the trooper's testimony on the discovery of the marijuana. "Well, Officer," the judge said, "your credibility on this entire case rests on your ability to smell marijuana when you put your head or body back into the cab looking for the prescriptive medicine." Because Wingo testified that he did not "have the words to explain exactly what it smells like, but I know ... it when I smell it," the trial court ostensibly found the trooper's testimony incredible.

Based on its apparent disbelief of Wingo's testimony on the discovery of the marijuana, the trial court apparently believed that the State failed to offer persuasive evidence of the reasonableness of Trooper Wingo's belief that the camper shell contained, more probably than not, contraband. Although the members of this Court might very well have reached a different result in considering this evidence, that is of little consequence. On this record, and considering the ability of the trial court—and our inability—to assess the credibility of Trooper Wingo's testimony, we do not find the trial court's ruling clearly erroneous.

## D.

The State urges that *State v. Yowell*, 513 S.W.2d 397, 402 (Mo. banc 1974), requires that a criminal defendant bear the burden of producing probative evidence in support of his motion to suppress. Because Milliorn failed to produce such probative evidence here, the State argues that the trial court erred in suppressing the evidence. In response to the State's argument on this issue, we limit our discussion to warrantless searches.

*Yowell* does not control this case. Subsequent to this Court's decision in *Yowell*, Section 542.296, RSMo 1986, took effect. Section 542.296 created new law; it did not have a statutory antecedent. By its clear language Section 542.296.6 places "the burden of going forward with the evidence and the risk of nonpersuasion" on the state "to show by a preponderance of the evidence that the motion to suppress should be overruled." The language of Section 542.296.6 is therefore consistent with cases holding that warrantless searches are presumptively unreasonable and the burden of placing the search within an exception to the warrant requirement falls on the State. *State v. Olds*, 603 S.W.2d 501, 506 (Mo. banc 1980). The State's point is denied.

## III.

### A.

Finally, the State contends that the trial court erred in suppressing this evidence because law enforcement personnel would inevitably have discovered it in the course of the inventory of the vehicle's contents following the vehicle's impoundment. *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), and *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987).

In *Nix*, the Supreme Court held that where law enforcement personnel would ultimately or inevitably have discovered evidence, the evidence is admissible, notwithstanding the constitutionally invalid search. "[I]f the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceed-

ings." *Nix,* 467 U.S. at 447, 104 S.Ct. at 2511. This Court adopted the inevitable discovery exception in *State v. Butler,* 676 S.W.2d 809 (Mo. banc 1984).

In *Colorado v. Bertine,* a police officer arrested Bertine on charges of driving while under the influence of alcohol. After taking Bertine into custody, but before the arrival of the tow truck summoned to take Bertine's van to the impoundment lot, a back-up officer inventoried the contents of the van in accordance with local police procedures. In that process, the officer discovered and opened a closed backpack, finding controlled substances, cocaine paraphernalia and a large amount of cash. Applying principles enunciated in *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), and *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), the Supreme Court held that evidence discovered in the course of a reasonable, warrantless inventory search was admissible. *Bertine,* 479 U.S. at 376, 107 S.Ct. at 743. It made no difference that Bertine had a privacy expectation in the backpack.

> The Supreme Court of Colorado also thought it necessary to require that police, before inventorying a container, weigh the strength of the individual's privacy interest in the container against the possibility that the container might serve as a repository for dangerous or valuable items. We think that such a requirement is contrary to our decisions in *Opperman* and *Lafayette,* and by analogy to our decision in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

*Bertine,* 479 U.S. at 374–75, 107 S.Ct. at 742–43. Instead, the existence of standardized criteria for determining whether to impound a vehicle and the unreasonableness of expecting "police officers in the everyday course of business to make fine and subtle distinctions in deciding which containers or items may be searched and which must be sealed as a unit," *id.* at 375, 107 S.Ct. at 743, *quoting Lafayette,* 462 U.S. at 648, 103 S.Ct. at 2610, provide the rationale for the inventory search exception.

*Bertine* adopted reasoning consistent with this Court's prior pronouncement in *State v. Valentine,* 584 S.W.2d 92, 98 (Mo. banc 1979). In *Valentine,* the Court posited three justifications that render inventory searches reasonable: (1) the protection of the vehicle owner's property, (2) the protection of the police from false claims of lost property, and (3) the protection of the police from potential danger. If the state can show that these purposes form the basis for an inventory search, the search is reasonable. *Bertine,* 479 U.S. at 373, 107 S.Ct. at 742. This is so even though the officers believe that the search will reveal contraband. "[T]he mere suspicion that contraband or other evidence will be found does not invalidate an otherwise valid inventory search conducted pursuant to proper police procedure." *State v. O'Connell,* 726 S.W.2d 742, 748 (Mo. banc 1987).

The issue whether the inevitable discovery exception applies to inventory searches is one of first impression before this Court, nor has the United States Supreme Court addressed the issue.[2]

In our view, it makes little sense to conclude that the inevitable discovery exception applies only in circumstances in which law enforcement officers are already involved in a search. *Bertine* holds that evidence obtained in a reasonable inventory search[3] is admissible despite the absence

---

**2.** *New York v. Class,* 475 U.S. 106, 119, 106 S.Ct. 960, 968, 89 L.Ed.2d 81 (1986) n. *.

**3.** There is some question whether the inventory of an automobile is a search within the meaning of the Fourth Amendment. "Given the benign noncriminal context of the intrusion [of an inventory search], [citations omitted], some courts have concluded that an inventory does not constitute a search for Fourth Amendment purposes. [Citations omitted.] Other courts have expressed doubts as to whether the intrusion is classifiable as a search. [Citations omitted.] Petitioner, however, has expressly abandoned the contention that the inventory in this case is exempt from the Fourth Amendment standard of reasonableness." *South Dakota v. Opperman,* 428 U.S. at 370, n. 6, 96 S.Ct. at 3097–98, n. 6. For purposes of this opinion, we assume, without deciding, that the inventory in question constitutes a search.

of a warrant. *Bertine*, 479 U.S. at 371, 107 S.Ct. at 741. If the government can show that steps taken to protect itself from false claims of theft or to protect the owner's property would inevitably have led to the discovery of contraband, *Nix* applies and the evidence is admissible. We so hold.

### B.

In this case, Trooper Wingo placed Milliorn under arrest for driving with a suspended license and failure to keep a controlled substance in the container in which it was delivered to him. On cross examination, Wingo testified that he decided to inventory the contents of the vehicle prior to initiating the search for the prescriptions (which led to the discovery of the marijuana) because "I was going to have the vehicle towed." He decided against leaving the car locked beside the interstate highway in order to protect the vehicle and its contents. "I didn't want it vandalized," Wingo testified. "With someone coming from Texas or some other location to pick it up, during that period of time it could have been vandalized, and I was taking care of the property for the owner."

At the hearing on the motion to suppress, Sergeant James R. Temmen, property control officer of Troop A, testified that he arrived at the scene of the arrest in response to Trooper Wingo's request for assistance. Once there, he took possession of the vehicle, drove it to the Lafayette County jail, performed an inventory search and completed an "inventory sheet" in order to describe the contents of the vehicle accurately.

The trial judge overruled those portions of the defendant's motion to suppress in which Milliorn requested suppression of the prescription medications found on his person and the currency. From this denial and the judge's statements at the hearing, we conclude that the judge believed Trooper Wingo's testimony on the lawfulness of the initial stop, the arrest of Milliorn, and the pat down search incident to the arrest that yielded the unmarked pill bottle.

As we have said, *Bertine*, *Lafayette* and *Opperman* all require some show-

ing that the decisions to impound and conduct an inventory were carried out "in accordance with **standard procedures** in the local police department." *Opperman*, 428 U.S. at 375, 96 S.Ct. at 3100 (emphasis in original). In our view, Section 304.155.1(5), RSMo 1986, establishes standardized criterion for the decision to impound a vehicle. That statute permits a member of the state highway patrol to arrange for removal of a vehicle on a public highway when the person driving the vehicle is "arrested for an alleged offense for which the officer is required to take the person into custody."

Once the decision to impound is made consistent with the statutory authority, the inventory that follows is reasonable if the government shows it is motivated by a desire to protect itself against false claims of theft or to protect property from damage. *See* W. LaFave, 3 Search & Seizure § 7.4(a) at 98 (2nd ed. 1987) ("the courts have upheld inventory searches whenever the initial taking of custody of the car has been considered lawful"). We do not believe prophylactic inventories for such purposes violate the Fourth Amendment. The State showed by a preponderance of the evidence that the impoundment in this case was motivated by legitimate governmental concerns, not a desire to search for evidence.

Although the impoundment and inventory of the vehicle were lawful, for the inevitable discovery doctrine to apply to the inventory search, the government must show that the inventory search was inevitable. *Nix* requires the State to show "by a preponderance of the evidence that the information ultimately or inevitably **would have been discovered** by lawful means." *Nix*, 467 U.S. at 444, 104 S.Ct. at 2509 (emphasis added). "[I]nevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment." *Id.* at 445, 104 S.Ct. at 2509.

In *United States v. Gorski*, 852 F.2d 692, 696 (2d Cir.1988), FBI agents searched the defendant's shoulder bag at the time of his arrest and found cocaine. The government

argued that an inventory search would have uncovered the cocaine and the evidence was admissible under the inevitable discovery rule. The Second Circuit acknowledged that an inventory search would have been proper, but noted that a "thorough review of the record reveals no evidence that such searches were an invariable, routine procedure in the booking and detention of a suspect at the particular FBI office involved." *Id.* at 696.

While it may be true that the State would have discovered the marijuana in the camper of the pickup truck, the State bears the burden of proving by a preponderance of the evidence that such discovery was inevitable. Neither witness for the State, Officer Wingo nor Sergeant Temmen, testified regarding routine inventory procedures for impounded vehicles. Thus, the State failed to meet its burden. In the absence of evidence showing the inevitability of the inventory search of the automobile, the inevitable discovery doctrine cannot justify the admission of the evidence.[4]

### IV.

The judgment of the trial court is affirmed.

BLACKMAR, C.J., and COVINGTON and HOLSTEIN, JJ., concur.

HIGGINS, J., concurs in judgment in separate opinion filed.

SEILER, Senior Judge, concurs in judgment and concurs in concurring opinion of HIGGINS, J.

RENDLEN, J., dissents.

BILLINGS, J., not sitting.

HIGGINS, Judge, concurring in the judgment of suppression.

Although I agree with the majority that the judgment of suppression should be affirmed, in my opinion the majority engages in unnecessary discussion of both probable cause and inevitable discovery that could lead to unintended and unwarranted perceptions. Accordingly, and with due respect for the majority, I limit my concurrence to affirmance of the judgment and adapt the substance of the opinion of the Honorable Harold L. Lowenstein for the Court of Appeals, Western District, with emphasis supplied in support of my position:

The State of Missouri appeals from the grant of a motion by respondent Patrick Milliorn *to suppress as evidence fifteen trash bags of marijuana* discovered by police during the search of the camper portion of a 1984 Ford pickup truck. Milliorn was charged with four counts of possession of more than thirty-five grams of marijuana. Milliorn moved to suppress the evidence on the ground it had been obtained in an unlawful search and seizure. The trial court sustained this motion.

Trooper James Wingo of the Highway Patrol observed a 1984 Ford pickup truck with camper shell being driven by respondent, Patrick Milliorn. By use of radar or some other speed detection device, Wingo determined that Milliorn was traveling at 69 mph, in excess of the posted 65 mph speed limit.

Wingo stopped the truck and walked to the truck window, passing the rear camper portion of the truck, and began questioning Milliorn. Wingo could not see into the back portion of the truck which was enclosed by a camper shell with its windows tinted. In the course of a computer check of Milliorn's Colorado operator's license, Wingo discovered it had been suspended in Colorado, the state of issue. Milliorn was then placed under arrest for driving without a valid operator's license, and Wingo conducted a pat-down search. The search uncovered an unmarked, brown pill bottle which contained various controlled medications.

At this point, Milliorn stated that prescriptions for the medications were located in the passenger compartment of the truck

---

4. This holding does not necessarily end the inquiry, however. In *State v. Howell*, 524 S.W.2d 11, 19 (Mo. banc 1975), this Court acknowledged the interlocutory nature of a motion to suppress. "Thus, a trial court can receive additional evidence and change its ruling prior to admitting the objected-to items in evidence before a jury."

and could be found if Wingo looked for them. Upon entry into the truck, Wingo testified he could smell the strong odor of unprocessed raw marijuana. However, he could find none in the passenger compartment. He then took the keys from the ignition and opened the camper shell, uncovering *the marijuana, the subject of the suppression hearing.*

Although the State has come forth with numerous points seeking reversal of the order suppressing the marijuana, its case can be narrowed to two separate and distinct contentions. First, *the State argues that Trooper Wingo possessed probable cause to believe that the truck contained contraband; and* second, *even if the initial search had been unlawful, the marijuana ultimately would have been discovered in the course of an otherwise lawful vehicle inventory search.*

As to the standard of review, *inquiry is limited to whether the trial court's decision is supported by substantial evidence. State v. Craig,* 759 S.W.2d 377, 378 (Mo. App.1988). *Upon review of an order suppressing evidence, the facts and reasonable inferences arising therefrom are to be stated favorably to the order challenged on appeal and the court may disregard contrary evidence and inferences if the evidence is otherwise sufficient to sustain the lower court's finding. Id.* at 379; *State v. McQuinn,* 761 S.W.2d 668, 669 (Mo.App.1988); *State v. Blair,* 691 S.W.2d 259, 260 (Mo. banc 1985).

## PROBABLE CAUSE

It is the law that police officers possessed of probable cause to believe contraband is concealed in an automobile can conduct a warrantless search of the vehicle and any containers found therein. *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *State v. Jackson,* 646 S.W.2d 367, 369 (Mo.App.1982). "[T]he probable cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers." *Ross,* 456 U.S. at 808, 102 S.Ct. at 2164.

Applying the above principles to the facts adduced at the suppression hearing, coupled with the *deference given to the trial court, this court is bound to uphold* the finding that the search of the camper shell of the vehicle *was without probable cause and the suppression of the marijuana was supported by substantial evidence.*

The State's evidence at the suppression hearing consisted only of Trooper Wingo's testimony. Therefore, disposition of this point turns directly on whether the trial judge believed Wingo. *Credibility is the sole issue. The court chose not to believe Wingo's testimony, and unless this decision is not supported by substantial evidence, it cannot be overturned.*

Several reasons may be ascribed to the court's ruling. First, Trooper Wingo's testimony at deposition and at the suppression hearing concerning the speed of the truck was contradictory. He first stated at deposition he wasn't sure how fast Milliorn was traveling; then, at the suppression hearing, he stated Milliorn was traveling 69 mph. Wingo explained the reason for this discrepancy was he was "never asked ... about the radar unit" at deposition. *The judge obviously did not accept Wingo's explanation.* Second, although Wingo stated he had called in a routine operator license check at the time of the stop showing Milliorn's license to be suspended, there was no other evidence to support this contention; there was no radio log or tape recording system offered to show that this call ever took place, nor did Wingo attempt to contact the state of Colorado to verify this fact. *Finally,* and most importantly, *the court did not believe Trooper Wingo smelled marijuana when he entered the cab of the truck.* Wingo admitted he smelled nothing as he walked by the camper three separate times before finally entering the cab. Nor did he smell marijuana as he stood by the truck window talking with Milliorn. Also, taking into account the camper portion of the truck is a closed and separate unit from the cab, it is hard to believe Wingo could smell anything con-

tained in the camper while he was rummaging through the cab.

*In sum, it cannot be said that the trial court's decision to suppress is not supported by substantial evidence.* If Trooper Wingo did not smell marijuana, there was no probable cause to search the camper portion of the vehicle. "[G]enerally[,] an arrest for a traffic violation standing by itself will not provide probable cause for an officer to believe that the contents of an automobile offend against the law to justify searching the entire automobile." *State v. Williams,* 654 S.W.2d 238, 241 (Mo.App. 1983).

### INEVITABLE DISCOVERY

The State asserts that even if the original search was unlawful due to lack of probable cause, the camper shell would have eventually been searched and the marijuana ultimately discovered during the course of an otherwise lawful vehicle inventory search. "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... the evidence should be received." *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *see also State v. Ferguson,* 678 S.W.2d 873 (Mo.App.1984); *State v. Butler,* 676 S.W.2d 809 (Mo. banc 1984).

The State asserts an inventory search would have been made of the locked and sealed camper portion of the truck. The impoundment of the truck would probably have been valid since it would have been left unoccupied on Interstate 70 after Milliorn's arrest, placing the public's safety in question. *Ferguson,* 678 S.W.2d at 876–77. *However, a legitimate seizure does not automatically justify an unlimited search of the vehicle. An inventory search must be reasonable in scope. United States v. Wilson,* 636 F.2d 1161, 1163 (8th Cir.1980). *Inventory searches of vehicles following impoundment are justified for three reasons: 1) protection of the vehicle owner's property; 2) protection of the police from claims of lost property; and 3) protection of the police*

*from potential danger. Williams,* 654 S.W.2d at 241; *State v. Valentine,* 584 S.W.2d 92, 98 (Mo. banc 1979). *Nowhere in brief nor at argument did the State assert any of these three reasons for an inventory search of the locked camper shell portion of the vehicle,* and argument on the point would not have changed the outcome of the ruling. It has been held there is a greater expectation of privacy in the locked trunk of an automobile than in the interior of a car. *Wilson,* 636 F.2d at 1164; *Williams,* 654 S.W.2d at 242; *United States v. Maier,* 691 F.2d 421, 424 (8th Cir.1982). This analysis also extends to locked camper shells. *See Maier.* The only distinguishing factors allowing the search of trunks and camper shells seem to be probable cause arguments, *Jackson,* 646 S.W.2d at 369, and plain view arguments. *Williams,* 654 S.W.2d 238; *Maier,* 691 F.2d 421; *Wilson,* 636 F.2d 1161. *There is no contention of plain view; probable cause based on smelling the contraband has been denied under the first point. Strengthened by the idea that an inventory search may ordinarily be accomplished without a serious intrusion into the locked trunk or camper shell of a vehicle, Wilson,* 636 F.2d at 1165–66, *it cannot seriously be urged that an inventory search under the present circumstances would have been valid. It cannot be said the State could have shown by a preponderance of the evidence, Nix,* 467 U.S. 431, 104 S.Ct. 2501, *that the marijuana would have been discovered because it cannot show an inventory search would have been valid under these facts.*

I would affirm the trial court's decision to suppress. Alternatively, the case should be retransferred for promulgation of the opinion of the court of appeals.