**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Glenn Ruel BURNETT, Defendant–
Appellant.**

**No. 93–50065.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1993.

Decided Feb. 11, 1994.

18 U.S.C. § 3742, and we vacate and remand in part and dismiss in part.

## I

On July 8, 1992, a hot and muggy summer day, Burnett entered a bank in Simi Valley, California wearing a fake beard, a floppy hat pulled down over his eyes, sunglasses, and a green jogging suit. Concerned about Burnett's strange appearance and suspicious behavior, bank personnel called the police. Before the police arrived, however, Burnett left.

A short time later, Burnett returned to the bank. A bank employee again called the police and activated the bank's alarm system. Burnett approached a teller and told her he had a bomb and a gun. He showed the teller a grey block with wires attached and the weapon. Burnett demanded money, and the teller gave him $379 from the cash drawer. Police arrested Burnett as he left the parking lot in a Jeep with no license plates. The police discovered that the "bomb" was actually modeling clay and that the "gun" was a starter pistol.

On September 11, 1992, Burnett pled guilty to robbery of a federally insured bank in violation of 18 U.S.C. § 2113(a). The district court sentenced Burnett on January 25, 1993. The district court rejected Burnett's contention that the starter pistol was a "dangerous weapon" rather than a "firearm." Thus, the court applied the Sentencing Guidelines' five-level firearm enhancement. *See* U.S. Sentencing Comm'n, *Guidelines Manual* § 2B3.1(b)(2)(C) (Nov. 1992) (hereinafter "U.S.S.G."). The district court also rejected Burnett's claim that he was entitled to a downward departure for "aberrant behavior." The court sentenced Burnett to 51 months imprisonment followed by five years of supervised release.

## II

█ Burnett claims the district court erred by treating the starter gun as a firearm rather than a dangerous weapon. We review de novo the application of the Sentencing Guidelines. *United States v. Fagan*, 996 F.2d 1009, 1017 (9th Cir.1993). We re-

Humberto Diaz, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Clare S. Phillips, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Before: BROWNING, BEEZER, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Glenn Burnett appeals the sentence imposed following his guilty plea to one count of bank robbery. Burnett argues the district court erred by applying the Sentencing Guidelines' five-level firearm enhancement based on his use of a starter pistol to commit the robbery. Burnett also claims the district court erred by concluding it did not have discretion to depart downward for aberrant behavior. We have jurisdiction pursuant to

view for clear error the district court's factual findings in the sentencing phase. *United States v. Chapnick*, 963 F.2d 224, 226 (9th Cir.1992). Because Burnett challenges the district court's decision to apply U.S.S.G. § 2B3.1(b)(2)(C), our review is de novo.

### A

The Guidelines distinguish between firearms and dangerous weapons for enhancement under U.S.S.G. § 2B3.1. A robbery defendant who "brandished, displayed, or possessed" a firearm receives a five-level enhancement. U.S.S.G. § 2B3.1(b)(2)(C). A robbery defendant who "brandished, displayed, or possessed" a dangerous weapon receives a three-level enhancement. *Id.* § 2B3.1(b)(2)(E).[1] "Firearm" is defined as:

> any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by action of an explosive.... A weapon, commonly known as a "BB" or pellet gun, that uses air or carbon dioxide pressure to expel a projectile is a dangerous weapon but not a firearm.

*Id.* § 1B1.1, comment. (n.1(e)).[2] "Dangerous weapon" is "an instrument capable of inflicting death or serious bodily injury. Where an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon." *Id.* § 1B1.1, comment. (n.1(d)).

A plain reading of the definition of firearm reveals that not all starter guns are firearms. The phrase "(including a starter gun)" modifies the word "weapon." Thus, a starter gun is only a firearm if it "will or is designed to or may readily be converted to expel a projectile by action of an explosive." *Id.* § 1B1.1, comment. (n.1(e)).

■ A starter gun cannot be treated as a firearm under the Guidelines simply because it resembles a firearm. A robbery defendant displaying a BB gun, regardless of how authentic it looks, only receives the three-level dangerous weapon enhancement. *Id.* §§ 1B1.1, comment. (n.1(e)) & 2B3.1(b)(2). In *United States v. Koonce*, 991 F.2d 693, 698 (11th Cir.1993), the Eleventh Circuit held that the five-level firearm enhancement could not be applied simply because the BB gun used by the defendant to commit a robbery looked like a real pistol. Although the Guidelines treat items that appear to be dangerous weapons as dangerous weapons, the Guidelines do not treat items that only appear to be firearms as firearms. *Id.* at 697–98.

■ Judicial interpretation of similar statutes supports our view that a starter gun is not a firearm unless it "will or is designed to or may readily be converted to expel a projectile by action of an explosive." In *United States v. 16,179 Molso Italian .22 Caliber Winlee Derringer Convertible Starter Guns*, 443 F.2d 463 (2d Cir.), *cert. denied*, 404 U.S. 983, 92 S.Ct. 447, 30 L.Ed.2d 367 (1971), an unlicensed dealer challenged the seizure of 16,179 starter guns on the grounds they were not firearms, as defined in 18 U.S.C. § 921—the source of the Guidelines' definition of firearm. The court found the starter guns were firearms because at trial the government showed the guns "could be converted to fire live ammunition within three to twelve minutes." *Id.* at 465.

Two states have statutes defining firearms with language substantially similar to the Guidelines' definition. *See* Fla.Stat. § 790.001(6) (1989) ("any weapon (including a starter gun) which will, is designed to, or may readily be converted to expel a projectile");

---

**1.** Prior to November 1, 1991, the Guidelines provided the same three-level enhancement for brandishing, displaying, or possessing either a firearm or a dangerous weapon. *See* U.S.S.G. § 2B3.1(b)(2)(C) (Nov. 1990). Thus, Burnett's citation to *United States v. Smith*, 905 F.2d 1296 (9th Cir.1990), for the proposition that the three-level dangerous weapon enhancement should be applied to the present case is not persuasive. At the time of the *Smith* decision, the Guidelines did not distinguish between firearms and dangerous weapons.

**2.** Before November 1, 1991, the definition of firearm did not mention starter guns. It read: " 'Firearm' means any weapon which is designed to or may readily be converted to expel any projectile by the action of the explosive." U.S.S.G. § 1B1.1, comment. (n.1(e)) (Nov. 1990). The definition was amended in 1991 "to track more closely the definition of firearm in 18 U.S.C. § 921." U.S.S.G.App.C., amend. 388 (Nov. 1991).

42 Pa.Cons.Stat. § 9712(e) (1993) (same). The courts in these states require the government to prove the starter gun can either expel a projectile or be readily converted to do so in order to treat the starter gun as a firearm. *See, e.g., Charley v. State,* 590 So.2d 5, 6 (Fla.Dist.Ct.App.1991); *Commonwealth v. Cofoni,* 349 Pa.Super. 407, 503 A.2d 431, 435 (1986). *But cf. Commonwealth v. Melvin,* 378 Pa.Super. 59, 548 A.2d 275, 280 (1988) (court did not appear to require an individualized showing that the starter pistol could fire or be converted to fire projectiles; instead the court relied on findings in past cases like *Cofoni*), *appeal denied,* 522 Pa. 588, 561 A.2d 741 (1989).

Therefore, a starter gun is not a firearm under the Guidelines unless it "will or is designed to or may readily be converted to expel a projectile by action of an explosive." *See* U.S.S.G. § 1B1.1, comment. (n.1(e)).

### B

■ The government bears the burden of proving, by a preponderance of the evidence, the facts necessary to enhance a defendant's offense level under the Guidelines. *United States v. Howard,* 894 F.2d 1085, 1089–90 (9th Cir.1990). The government failed to meet this burden in the present case because it did not prove that the starter gun used by Burnett was a firearm as defined in the Guidelines.

At one point during sentencing, the district court did question FBI Special Agent Kuhn about the starter gun.

THE COURT: What did it look like?

MR. KUHN: It looked like a starter pistol, sir, very similar to a regular weapon.

THE COURT: Did you try to fire it?

MR. KUHN: Well, you can activate it as if you're firing it by pulling the trigger, et cetera, but it wouldn't fire a regular—

THE COURT: Starter pistols don't do that—

MR. KUHN: Correct.

THE COURT: —by definition. It would make a loud bang, though if you did, wouldn't it?

MR. KUHN: Yes, sir, if it were loaded. Rep.Tr. 1/25/93 at 6–7. This colloquy did not establish that Burnett's starter gun "will or is designed to or may readily be converted to expel a projectile by action of an explosive."

Consequently, we vacate Burnett's sentence and remand for resentencing. The district court should conduct an evidentiary hearing to determine, in accordance with this opinion, whether the starter gun should be treated as a firearm or a dangerous weapon under the Guidelines.

### III

■ Burnett argues the district court erroneously believed it did not have discretion to depart downward based on Burnett's aberrant behavior. However, the court clearly recognized its authority to depart. It merely declined to do so. During sentencing, the court stated:

> You know, this is a tough case, but even were I to depart for aberrant behavior, it would be in such a minor degree that it wouldn't be terribly important to him, and I don't think it's justified. I agree with the Probation Office that it's close, but it doesn't quite get there.

Rep.Tr. 1/25/93 at 13.

■ We lack jurisdiction to review the district court's discretionary decision not to depart downward. *United States v. Belden,* 957 F.2d 671, 676 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 234, 121 L.Ed.2d 169 (1992); *United States v. Morales,* 898 F.2d 99, 103 (9th Cir.1990). We will also not review a district court's determination that it has no authority to depart when the district court indicates it would not depart, even if it had the authority to do so. *United States v. Williams,* 898 F.2d 1400, 1403 (9th Cir.1990). Therefore, we dismiss this part of Burnett's appeal.

### IV

We VACATE Burnett's sentence and REMAND for resentencing in order for the district court to determine, in accordance with this opinion, whether the starter gun should be treated as a firearm or dangerous weapon under the Guidelines. We DISMISS

the part of Burnett's appeal challenging the district court's discretionary decision not to depart downward.