UNITED STATES of America, Appellee,

v.

**Donald Dean GLEASON, Appellant.**

No. 94–1080.

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1994.

Decided May 20, 1994.

---

Alfred E. Willett, Cedar Rapids, IA (argued) for the appellant.

Stephen John Rapp, Waterloo, IA, argued (Janet L. Pepenthien, Cedar Rapids, IA, on the brief), for appellee.

Before McMILLIAN, WOLLMAN, Circuit Judges, and NANGLE, Senior District Judge.*

NANGLE, Senior District Judge.

Donald Dean Gleason entered a conditional plea of guilty to one count of bank robbery in violation of 18 U.S.C. § 2113. He appeals the district court's [1] denial of his motion to suppress and three aspects of his sentence. We affirm.

### I.

On June 16, 1993, at approximately 1:35 p.m., Gleason robbed American Trust and Savings Bank in Lowden, Iowa. He displayed a small handgun, and directed Janie Drewleow, a bank employee, to place money in a medium-sized white plastic shopping bag with a checkerboard design. Drewleow deposited $5,022.00 in the bag and handed the bag to Gleason. Gleason then fled the bank in an older model full-size green pickup truck with no tailgate or license plate in the back and with a large spare tire lying in the bed of the truck.

Shortly after Gleason fled, police arrived at the bank and radioed a description of the bank robber and the truck over the police aid channel. This description included the fact that the robber was armed. Approximately 25 minutes after the robber fled the bank, Trooper Agapitos of the Iowa State Patrol met a dark green pickup matching the description of the getaway vehicle. The pickup turned into a gravel road, and Gleason got out of the truck. Trooper Agapitos asked Gleason if he had any weapons in the truck and if he could check the truck for weapons. Gleason consented, mentioned that he was a former police officer in Davenport, Iowa, and assisted in the search. Trooper Abernathy

---

* The HONORABLE JOHN F. NANGLE, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa.

then arrived, read Gleason his *Miranda* rights, handcuffed him, and placed him in the back of the patrol car. Despite Gleason's statement that the passenger door was inoperable, Trooper Agapitos unlocked and opened that door; under the passenger seat, he found a white plastic bag with a checkerboard design on front containing $5,002.00. The gun and the clothing used in the robbery were never found.

When FBI agents arrived, they asked Gleason for a written consent to search. Before signing the consent form, Gleason asked Trooper Agapitos to note the following on the bottom of the form: "Prior to Donald Gleason signing this consent to search, a bag of a large sum of money was found under the passenger side seat." Gleason then signed the written consent form at 4:37 p.m.

After his indictment and plea of not guilty, Gleason filed a motion to suppress contesting the consensual nature of the search of his pickup truck. Although Gleason claimed at the suppression hearing that he had not consented to the search, the district court rejected his testimony and found consent. The court alternatively held that the search was justified as a limited investigative stop. On the eve of trial, Gleason entered a guilty plea conditioned on his right to appeal the trial court's ruling on his motion to suppress.

At the sentencing on December 21, 1993, the district court enhanced Gleason's base offense level by two levels for obstruction of justice, denied Gleason a two-level reduction for acceptance of responsibility, and assessed a five-level enhancement for use of a firearm.

## II.

Gleason first contests the district court's denial of his motion to suppress, arguing that he did not voluntarily consent to the search and that the search was not justified as part of an investigative stop. His arguments are without merit.

■ A district court's determination that a defendant voluntarily consented to a search

is reviewed under the clearly erroneous standard. *United States v. Barahona,* 990 F.2d 412 (8th Cir.1993). A person's consent may be inferred from his words, gestures, and conduct. *Id.* at 418. The district court properly inferred Gleason's consent from his testimony that facilitated the trooper's search of a cardboard box located in the truck. In addition to Gleason's assistance during the search, the district court noted that Gleason's general demeanor suggested consent; he chatted with Trooper Agapitos, reminded the trooper of his work as a police officer, and acted friendly, not hostile. Finally, the district court ultimately found Trooper Agapitos' testimony that Gleason consented to the search to be more credible than Gleason's since Trooper Agapitos was an experienced officer and Gleason had a great deal of self-interest in having the testimony suppressed. This credibility determination is "virtually unreviewable on appeal." *United States v. Adipietro,* 983 F.2d 1468, 1472 (8th Cir.1993). We find no clear error in either the district court's inferences from Gleason's conduct or the district court's credibility determination.[2]

■ Gleason next contends that even if he consented, he consented only to a stop and frisk of his truck for weapons which was concluded before Trooper Agapitos found the money. Gleason maintains that Trooper Agapitos asked, "Do you have any weapons in there, mind if I look?" and that he responded, "No." In light of the compound question, Gleason alleges that he gave consent only to a search for weapons. Assuming arguendo that Gleason gave only limited consent, his failure to object to the continuing search made the trooper's search of any place a gun could be hidden, including under the passenger seat of the truck, objectively reasonable. *See United States v. Martel–Martines,* 988 F.2d 855 (8th Cir.1993) (noting scope of defendant's consent measured by "objective reasonableness").

■ In addition to his consent argument, Gleason attacks the district court's alternative holding that the search was incident to a

2. Gleason also contends that the consent form, produced several hours after Trooper Agapitos' search, indicates that he never gave consent to that search. This argument is unavailing since

we find that the evidence supports the district court's determination that Gleason consented to the search.

valid investigative stop. "[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts, which taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201 (1983) (*quoting Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968)); *accord United States v. Watts,* 7 F.3d 122 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 895, 127 L.Ed.2d 88 (1994). The fact that the radio report concerning the robbery mentioned that the suspect was armed provided Trooper Agapitos with a reasonable basis to conclude that the truck contained a weapon. *See Watts,* 7 F.3d at 126. As part of the search for weapons, Trooper Agapitos did not need to ignore the money he discovered. *See United States v. Peoples,* 925 F.2d 1082 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 370, 116 L.Ed.2d 322 (1991).

■ As part of both the consent and *Terry* stop arguments, Gleason alleges that Trooper Agapitos conducted a second search following the arrival of Trooper Abernathy, who placed Gleason in his patrol car. Gleason does not prevail under his consent argument because he never withdrew his consent upon Trooper Abernathy's arrival. Gleason's *Terry* argument also is without merit since a limited search of an automobile's interior is permissible even when the occupant has been removed from the automobile to deny the occupant further access to his weapons. *United States v. Cummins,* 920 F.2d 498 (8th Cir. 1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 428, 116 L.Ed.2d 448, 449 (1991).

Having determined that Gleason consented to the search of his automobile and alternatively that the search was justified as incident to a valid investigative stop, we affirm the district court's holdings.[3]

### III.

■ Gleason further contends that the district court erroneously assessed a two-level enhancement to his base offense level based upon his perjury at the suppression hearing. The applicable guideline provides a two-level increase "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing" of the offense. U.S.S.G. § 3C1.1 (Nov. 1, 1993). "[C]ommitting, suborning, or attempting to suborn perjury" is a type of conduct to which the enhancement applies. U.S.S.G. § 3C1.1, comment (n. 3(b)). Before imposing this enhancement, a district court must review the evidence and make independent findings, taking into account the definition of perjury as giving "false testimony concerning a material matter with the willful intent to provide false testimony." *United States v. Dunnigan,* —— U.S. ——, ——, 113 S.Ct. 1111, 1116, 122 L.Ed.2d 445 (1993).

■ We reverse a district court's:actual findings in support of a section 3C1.1 enhancement only if they are clearly erroneous. *United States v. Clay,* 16 F.3d 892 (8th Cir. 1994). The district court found that Gleason lied under oath at the suppression hearing about his consent to search, an issue that he knew was material, and that he used his experience as a police officer to attempt to manipulate the course of proceedings. *See* Sentencing Tr. at 113–114. After careful review, we conclude that the district court's findings were not clearly erroneous.

### IV.

■ Gleason next maintains that the district court erred in denying him a two-level reduction for acceptance of responsibility. The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility, and his determination should be afforded great deference and should not be disturbed unless it is without foundation. *United States v. Ransom,* 990 F.2d 1011 (8th

---

3. We also note that Gleason does not contest several additional exceptions to the warrant requirement—a search under exigent circumstances, a search incident to arrest, and an inventory search—that the district court found applicable.

Cir.1993). Gleason asserts that he truthfully admitted his conduct, voluntarily assisted authorities in locating the weapon used in the robbery, and entered a guilty plea. The district court rejected his arguments, terming his acceptance of responsibility as "halfhearted." Sentencing Tr. at 115. Additionally, the court noted that an acceptance of responsibility reduction would be inconsistent with a finding of obstruction of justice since Gleason chose "to lie at the suppression hearing . . . and tried to manipulate the system." *Id.* at 117. We defer to the district court's finding, and affirm the denial of the acceptance of responsibility reduction.

## V.

Finally, Gleason contests the five-level enhancement given by the district court for use of a firearm. The applicable sentencing guideline provides that ". . . if a firearm was brandished, displayed, or possessed, increase by 5 levels; . . . if a dangerous weapon was brandished, displayed, or possessed, increase by 3 levels." U.S.S.G. § 2B3.1 (Nov. 1, 1993). Gleason concedes that a three-level enhancement is warranted for use of a dangerous weapon based upon his contention that he used a water pistol that resembled a real gun. His argument rests upon the application notes to section 2B3.1, which state that an object that appears to be a dangerous weapon should be treated as such, but do not have a similar "appearance" provision for firearms. The district court believed bank employees' testimony that Gleason brandished a real firearm, making the lack of an appearance provision for firearms inconsequential.

The district court's fact finding about the type of weapon used is reviewed for clear error. *United States v. Elliott,* 992 F.2d 853 (8th Cir.1993). To arrive at its determination that Gleason used a real gun, the district court evaluated the testimony of Drewleow, Karma Kruckenberg, and Gleason. Gleason stated that he pawned all of his guns before the robbery and that he painted one of his son's water guns black for use in the robbery. During his proffer session, however, Gleason admitted that taking a weapon into a bank without an intent to use it would be suicide.

The bank employees' testimony discounted Gleason's contention that he used a toy gun. Drewleow, who is familiar with gun metal based upon her experience and her husband's ownership of long guns, stated that Gleason used a black gun with a hole the size of a pencil in the end of the gun. Drewleow's two young sons have many toy guns, and the hole on the end of Gleason's gun was much larger than the tiny dot on the end of water pistols. When Gleason's counsel showed Drewleow a water pistol similar to the one Gleason allegedly used in the robbery, she testified that the toy was smaller than the gun brandished by Gleason and that she could see light through the toy but not through the gun used by Gleason. Kruckenberg, another bank employee, confirmed that the Gleason's gun looked like metal and appeared to have been heavier than a plastic gun would have been. In light of Drewleow and Kruckenberg's testimony, the district court's finding that Gleason used a real gun was not clear error.

In light of this finding, Gleason's reliance on *United States v. Burnett,* 16 F.3d 358 (9th Cir.1994), and *United States v. Koonce,* 991 F.2d 693 (11th Cir.1993), is misplaced. Based upon the lack of an appearance provision in the firearm definition, the *Burnett* and *Koonce* courts stated that the five-level enhancement was improper where a district court specifically found that the defendant had not used a real gun. Since the district court made the opposite finding in the current matter, *Burnett* and *Koonce* do not make the imposition of a five-level enhancement improper.

Accordingly, we affirm the district court's suppression ruling and the sentence imposed upon Gleason.