**STATE of Missouri, Plaintiff–Appellant,**

v.

**Michael J. WELLS, Defendant–Respondent.**

No. 23519.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 22, 2000.

Paul R. Boyd, Special Pros. Atty., Benton, for Appellant.

Daniel T. Moore, Moore & Walsh, L.L.P., Poplar Bluff, for Respondent.

GARRISON, Judge.

The sole issue on this appeal is the propriety of the trial court's order suppressing contraband seized following the search of an automobile operated by Michael J. Wells ("Defendant"). The State appeals pursuant to § 547.200.1(3), RSMo Cum.Supp.1999, contending that suppression of that evidence was erroneous because it was properly seized pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); the officer had probable cause to search the remainder of the vehicle under the "automobile exception" after having found weapons in the car;

and the evidence would have inevitably been discovered when an inventory was made of the car.

■ The State has the burden of showing by a preponderance of the evidence that a motion to suppress should be denied. § 542.296.6 [1]; *State v. Franklin*, 841 S.W.2d 639, 644 (Mo. banc 1992). Appellate review of a motion to suppress is limited to determining whether sufficient evidence exists to sustain the trial court's holding. *State v. Wise*, 879 S.W.2d 494, 503 (Mo. banc 1994), *cert. denied*, 513 U.S. 1093, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995). If the trial court's ruling is plausible in light of the record viewed in its entirety, the appellate court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *State v. Milliorn*, 794 S.W.2d 181, 184 (Mo. banc 1990). We defer to the trial court's evaluation of the credibility of the witnesses and the weight of the evidence. *State v. Villa-Perez*, 835 S.W.2d 897, 902 (Mo. banc 1992).

· On September 16, 1997, Donnie Elder ("Elder") reported that a male with long brown hair, driving a small, shiny, red sports car with hidden headlights had shot at him on Highway 21 in Grandin, Missouri. Carter County Deputy Sheriff Clifford Cumins ("Deputy Cumins") talked with Elder who told him that as he was pulling out of Grandin heading south, a red car came up behind him and the occupant shot at him. Deputy Cumins then went to Highway 21 and, with the assistance of another deputy, stopped a car matching Elder's description, which was driven by Defendant. When Deputy Cumins approached the car he asked Defendant if he had any guns in the car, to which Defendant replied that he had a black long barrel rifle that was leaning against the front of the passenger seat, and a pistol located

on the right floorboard. After having Defendant put his hands on the steering wheel, Deputy Cumins went to the passenger side of the car and removed a loaded .22 caliber pistol in a holster from under some motorcycle parts in the passenger floorboard. Deputy Cumins had not been able to observe the pistol from either the driver or passenger's side of the car, although he had been able to see the rifle when he first approached the car. Deputy Cumins then instructed Defendant to get out of the car and asked him if there were other weapons in the car. Defendant said that there were none. According to Deputy Cumins, he asked for and received permission from Defendant to search the car. According to Defendant, however, he was never asked to consent to a search of the car, and he gave none.

When Deputy Cumins searched the rest of the car, he found a shop towel with two syringes rolled up in it behind the driver's seat. The syringes had a small amount of liquid in them which, according to Deputy Cumins, Defendant said he used to give shots to the fighting chickens that he raised. Defendant was then placed under arrest for possession of a concealed weapon and for "investigation of illegal drugs," and was taken to the Carter County Sheriff's Office.[2] Another deputy drove Defendant's car to the police station in Van Buren where its contents were inventoried. According to Deputy Cumins, it was department policy to inventory any impounded vehicle for identification and safekeeping of property contained in it, and he identified a document containing the inventory done on Defendant's car. Another witness employed with the SEMO Drug Task Force testified that it is a customary practice to do an inventory search of a vehicle after it is stopped if the subject is arrested or if the vehicle is seized. Other drug-related items were apparently found

---

1. All references to statutes are to RSMo 1994 unless otherwise indicated.

2. Paraffin tests on Defendant came back negative, and Deputy Cumins testified that he was no longer a suspect with relation to the shooting.

when the car's contents were inventoried, but the identity and extent of those items is not apparent from the record before us.[3]

Defendant filed a motion to suppress all items of evidence taken in the search of his car. The trial court held that the stopping of Defendant was consistent with the reasoning in *Terry*, and that Deputy Cumins was justified in retrieving the loaded pistol concealed in the front floorboard of the car. It held, however, that that "was the boundary of the *Terry* stop and subsequent weapons search [Defendant] had been removed from his auto the auto and weapon (a pistol) matching the victims [sic] statement had been found." It continued, saying that "... the officer continued to search the vehicle relying on an 'oral' consent which [Defendant] vigorously denied giving under all the circumstances the burden is on the State to prove further search of the vehicle was by consent, this they failed to do." Consequently, the trial court struck Count I of the information (possession of methamphetamine, a controlled substance, § 195.202), and Count II (attempt to manufacture a controlled substance, § 195.211).[4] This left Count III for trial (possession of a concealed weapon, § 571.030). The State appeals.

In its sole point on appeal, the State contends:

> The trial court clearly erred in ruling that certain drug evidence seized by the State from a vehicle stop be sup-

pressed because, A) the officers [sic] action of seizing the contraband from the passenger compartment of the car was proper under *Terry v. Ohio* and its progeny, B) the officer had probable cause to searh [sic] the rest of the passenger compartment of a motor vehicle for additional weapons or contraband after finding a concealed weapon in the passenger compartment under the automobile exception, and, C) the evidence suppressed by the court would have been inevitably discovered by the officer through an inventory of the vehicle or throgh [sic] the search incident to the [Defendant's] arrest from his vehicle.

The issue here apparently relates to the seizure of the syringes and other drug-related items. That portion of the motion to suppress relating to the guns was overruled and is not before us. What the State complains about is the suppression of items found after the guns were discovered and removed from the car.

The State first argues that the search of the vehicle and seizure of items, after the handgun was seized, was authorized under the theory of *Terry*. *Terry* stands for the proposition that an investigative detention, while a seizure, is authorized where specific and articulable facts and rational inferences from those facts give rise to a reasonable suspicion that a person has committed or is committing a

**3.** The State's Statement of Facts indicates that the Drug Task Force employee "assisted in the inventory of the items from [Defendant's] vehicle associated with methampetamine." The citation to the transcript in support of that statement refers to that employee's testimony in which she said she was called to the Van Buren, Missouri police department where they had Defendant's vehicle that she said "contained what they believed to be a methamphetamine lab." In the argument section of the State's brief, reference is made to "the seizure of the syringes out of the passenger compartment of the car and the contraband found in the trunk and engine area of the vehicle," which the State says was ordered suppressed by the trial court. The citation to the record in

support of that statement is to the court's order sustaining the motion to suppress, but which contains no specific reference to anything seized other than the loaded pistol. The motion to suppress also referred to "other items in the trunk and engine compartment of the vehicle" without further clarification. We proceed with the discussion of this appeal based on the implied agreement of the parties that the seized items which are the subject of this appeal are the syringes and other items, all of which were drug related.

**4.** No issue is raised on this appeal concerning the propriety of the order striking Counts I and II.

crime. 392 U.S. at 15–20, 88 S.Ct. at 1877–80, 20 L.Ed.2d at 902–05; *State v. Spurgeon*, 907 S.W.2d 798, 799 (Mo.App. S.D.1995). Probable cause to make an arrest is not necessary to make a stop authorized in *Terry*. *State v. Fernandez*, 691 S.W.2d 267, 269 (Mo. banc 1985). In this case, it is not the stop itself, which is in question, but whether the trial court erred in holding that the authorized search incident to that stop ended with the seizure of the pistol from the passenger floorboard of the car.

The State argues that the scope of the authorized *Terry* encounter extended beyond the seizure of the pistol and included the discovery and seizure of the drug-related items apparently found in the car as well as in the trunk and engine compartment. It cites *Fernandez*, 691 S.W.2d at 269–270, for the principle that a court should balance the need to locate criminals and protect the police officers against the invasion of the individual, considering the nature and quality of the intrusion. It also cites *State v. Lanear*, 805 S.W.2d 713, 716 (Mo.App. W.D.1991), for the proposition that the *Terry* stop principle has been "extended to the search of the interior of the vehicle 'if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.'"

■ The State acknowledges that the trial court apparently believed that Defendant had complied with Deputy Cumins' direction to get out of the car before the search of the rest of the car during which the items in dispute were discovered. As indicated earlier, we defer to the trial court's determination of credibility. The fact that Defendant was out of the car does not alone, however, prevent the officers from proceeding with the search authorized by the *Terry* stop. In *U.S. v. Gleason*, 25 F.3d 605, 608 (8th Cir.1994), *cert.*

*denied*, 513 U.S. 911, 115 S.Ct. 283, 130 L.Ed.2d 199 (1994), the court said that the limited search of an automobile's interior authorized by *Terry* is "permissible even when the occupant has been removed from the automobile to deny the occupant further access to his weapons." The *Gleason* court described the area of the search authorized pursuant to an investigative stop to be that of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden. *Id.*

Deputy Cumins had stopped Defendant because of a report that a man driving a car described as similar to that driven by Defendant, had shot at someone. In addition, Deputy Cumins had seen one firearm in the car and had retrieved another, which was loaded and concealed, after being told of it by Defendant. Under these facts, it was reasonable for Deputy Cumins to have a belief that Defendant was dangerous and might gain immediate control of weapons so that he was authorized to search the passenger compartment of the car. When he did so, he found the syringes. He was not required to ignore what he believed to be drug-related items found during a search for weapons. *Michigan v. Long*, 463 U.S. 1032, 1050, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201, 1220 (1983); *Gleason*, 25 F.3d at 608; *State v. Cross*, 757 S.W.2d 613, 615 (Mo.App. W.D.1988). The concealed loaded pistol and syringes were found during the search of the passenger compartment, which was authorized under these facts as an extension of the *Terry* stop.

■ The State also contends that Deputy Cumins had probable cause to search the rest of the passenger compartment of the vehicle for additional weapons or contraband after finding a concealed weapon in the passenger compartment under "the automobile exception." It should be noted that this portion of the point, by its terms, goes only to the syringes found in the passenger compartment, and not to the

other unspecified items found in the trunk and engine compartment.

A search of an automobile on the highways pursuant to probable cause to believe that contraband, weapons or evidence of a crime are within the automobile is a well established exception to the Fourth Amendment warrant requirement. *State v. Burkhardt,* 795 S.W.2d 399, 404 (Mo. banc 1990). "The automobile exception to the warrant requirement stems from the fact an automobile's mobility often presents an exigent circumstance making procurement of a search warrant unfeasible, and especially because citizens have a less significant expectation of privacy in their automobiles than in their homes or offices." *Id.* "Such automobile search may be conducted on probable cause to believe that contraband is concealed within, a belief springing from circumstances that would justify issuance of a warrant." *Id.* "Probable cause may arise when the facts and circumstances within the knowledge of the seizing officer are sufficient in themselves to produce in a man of reasonable caution a belief that the contents of the automobile offend the law." *Id.* Reduced to its simplest formulation, probable cause requires no more than a reasonable belief that it is more probable than not that the vehicle contains illegal property. *Milliorn,* 794 S.W.2d at 183.

In this case, Defendant had been stopped because his vehicle matched the general description of the car used in the reported shooting, and Deputy Cumins had already discovered a concealed weapon in the car. He had also observed another weapon against the passenger seat of the car. There is no suggestion that Deputy Cumins was required to then conclude that the car contained no other concealed weapons. Defendant seems to concede in his brief that the pistol found by Deputy Cumins was not the type reported involved in the shooting. That fact could be construed to raise the possibility of other weapons being in the car. Certainly, a further search was not prohibited by

Defendant's statement that there were no other weapons in the car. We hold that under these circumstances, Deputy Cumins had probable cause to proceed with the search of the car for other weapons. The right to do so did not, as apparently determined by the trial court, depend on whether Defendant consented.

It was during the search of other parts of the car that the syringes were found containing a liquid, which Deputy Cumins suspected was an illegal drug. As noted earlier, even though the continuation of the search was justified based on probable cause that the car contained other weapons, Deputy Cumins was not required to ignore the syringes with what appeared to be drugs, which he found during that search. It was after discovery of the syringes that Defendant was placed under arrest and removed from the scene along with his car, which was taken to the Van Buren police department.

Apparently an additional search of the car was conducted at the police department, resulting in the discovery and seizure of additional drug-related items. In this regard, we note that the existence of probable cause to search the vehicle at the scene does not necessarily preclude a continuation of that search after the car is taken from the scene to a police station. *State v. Lane,* 937 S.W.2d 721, 723 (Mo. banc 1997). *See also Chambers v. Maroney,* 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 429 (1970). In *State v. Childress,* 828 S.W.2d 935, 943 (Mo.App. S.D. 1992), we said that "[i]f the police have probable cause to justify a warrantless seizure of an automobile on a public roadway, they may conduct either an immediate or a delayed search of the vehicle," citing *California v. Acevedo,* 500 U.S. 565, 569, 111 S.Ct. 1982, 1986, 114 L.Ed.2d 619, 623 (1991). We also said in *Childress* that if probable cause justifies a search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. 828 S.W.2d at 943.

■ The State also contends that the seizure of the items from the car was justified on the basis that law enforcement personnel would have inevitably discovered them in the course of an inventory of the vehicle's contents following the vehicle's impoundment. In *Milliorn*, 794 S.W.2d at 184, the Court quoted from *Nix v. Williams*, 467 U.S. 431, 447, 104 S.Ct. 2501, 2511, 81 L.Ed.2d 377, 389 (1984), in saying "if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings." Inventory searches are reasonable on three basis: (1) the protection of the vehicle owner's property, (2) the protection of the police from false claims of lost property, and (3) the protection of the police from potential danger. *Milliorn*, 794 S.W.2d at 185. It is necessary, however, that there be some showing that the decision to impound and conduct an inventory was in accordance with standard procedures in the local police department. *Id.* at 186. Once the decision is made to impound in accordance with such standard procedures, the inventory that follows is reasonable if the government shows that it is motivated by a desire to protect itself against false claims of theft or to protect property from damage. *Id.*

In this case, there was testimony that it was the policy of the sheriff's department to inventory any impounded vehicle for the purposes of identification and safekeeping of any property in the vehicle. In *State v. Shelton*, 871 S.W.2d 598, 599 (Mo.App. E.D.1994), the court said "[e]vidence discovered during an inventory search conducted according to standardized procedures is admissible unless the police acted in bad faith or 'for the sole purpose of investigation.'"

■ Defendant argues that the evidence demonstrated that this inventory search was in bad faith and for the sole purpose of investigation. In support, he says that the inventory search of his car was done by the Drug Task Force employee instead of an employee of the sheriff's department, and she conducted the search because she was informed that it was with his consent. He cites no authority, however, requiring that conclusion under these facts. In addition, contrary to Defendant's assertion that the inventory search was conducted by the Drug Task Force employee, the testimony was that she only assisted other officers, including Deputy Cumins, in conducting that search. The fact, as found by the trial court, that the Drug Task Force employee was incorrect in any belief that Defendant had consented to the search, does not alone prevent the search from being an authorized inventory search. The existence of consent is not necessary if the search is justified on other grounds. *See Childress*, 828 S.W.2d at 944.

Defendant also argues that the inventory search of the car was unauthorized because it arose as a result of his arrest, which itself was predicated on the "illegal" search of the car at the scene where he was stopped. As discussed earlier, however, the roadside search that resulted in discovery of the syringes was authorized.

To sustain the trial court's suppression of the evidence, this court is required to find the evidence sufficient to conclude that the search of the car complained of was not authorized by law. Because, as discussed, the evidence is insufficient to support such a finding, the order of suppression must be reversed. The order suppressing evidence found in the car is reversed, and this cause is remanded with directions to admit such evidence, if relevant and otherwise admissible.

CROW, J., and BARNEY, C.J., concur.