STATE of Missouri, Plaintiff–Appellant,

v.

Diane COPELAND, Defendant–Respondent.

No. 21408.

Missouri Court of Appeals,
Southern District,
Division Two.

June 16, 1997.

Motion for Rehearing or Transfer
Denied July 7, 1997.

Application to Transfer Denied
Aug. 19, 1997.

Patrick L. King, Rolla, for plaintiff-appellant.

Tyce S. Smith, Sr., Smith & Dunbar, Waynesville, for defendant-respondent.

SHRUM, Judge.

This interlocutory appeal by the State pursuant to § 547.200[1] charges that the trial

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

Pertinent parts of § 547.200 read:

"1. An appeal may be taken by the state through the prosecuting attorney ... from any order ... the substantive effect of which results in:

court erred when it sustained the motion of Diane Copeland (Defendant) to suppress evidence. The evidence suppressed included marijuana seized from Defendant's person. Defendant's motion challenged the initial stop and the legality of the search. In sustaining Defendant's motion, the court did not give its reasons for suppressing the evidence.

On appeal, the State first contends that the "quantum of suspicious facts" compels a finding that "the arresting officer had reasonable suspicion to detain [Defendant;]" hence, the investigatory stop was valid. Second, the State argues that "[s]pecific [and] articulable" facts in the record require a finding that the policeman's search of Defendant's purse and diaper bag were "lawful as a weapons search."

The record supports a finding that the investigatory stop was invalid; therefore, it is not necessary to reach the question of whether the search was legal. We affirm.

At the hearing on the motion to suppress, the State had the burden of showing by a preponderance of the evidence that the motion to suppress should have been overruled. § 542.296.6; *State v. Franklin*, 841 S.W.2d 639, 644 (Mo.banc 1992). Our review is limited to a determination of sufficiency of the evidence to sustain the trial court's conclusion about whether the stop violated Defendant's rights. *State v. Warrington*, 884 S.W.2d 711, 715 (Mo.App.1994). We will reverse only if the trial court's judgment is clearly erroneous. *State v. Milliorn*, 794 S.W.2d 181, 183[5] (Mo.banc 1990). If the trial court's ruling is plausible in light of the record viewed in its entirety, this court may not reverse the ruling even though convinced that had it been sitting as trier of fact, it would have weighed the evidence differently. *Id.* at 184. We defer to the trial court's vantage point for assessing the credibility of witnesses and weighing the evidence. *State v. Villa–Perez*, 835 S.W.2d 897, 902[9] (Mo. banc 1992). We are free to disregard evidence and inferences contrary to the trial

....
"(2) Suppressing evidence...."

court's ruling. *Franklin*, 841 S.W.2d at 641[1].

At approximately 1:00 p.m. on December 8, 1994, a Rolla police dispatcher directed officers to a building at 701 East 10th Street that contained ten apartments. Both policemen who testified at the suppression hearing said they were told that "an assault was in progress" in apartment C. Neither policeman provided other details about the content of the radio dispatch.

Policeman Dillard (Dillard) was the first to arrive on the apartment building parking lot. He was in a "marked patrol car with lights." As Dillard drove into one end of a "C" type driveway and stopped, he saw a blue Ford pickup truck leaving the lot in a normal fashion through the other end of the driveway. Thereon, Dillard yelled at the driver of the pickup to stop. After the second shout, the driver stopped, got out, and walked toward Dillard per Dillard's instructions. Defendant, who was a passenger, remained in the truck as Dillard ordered. Dillard testified that his first inquiry to the driver was whether he could search the truck. At the suppression hearing, Dillard said that his request to search was "to make sure there was [sic] no weapons and to secure the scene[,]" yet neither the driver nor Defendant were subjected to a "pat down" search until a supervisory policeman arrived later and suggested the pat down.[2]

The driver consented to the vehicle search, whereon Dillard searched and found a baseball bat and ammunition for firearms. Dillard agreed that this search was made without first asking the occupants of the pickup about apartment C or inquiring about "the assault in the apartment [to] assist in the investigation[ ]" of that alleged incident.

As Dillard found the ammunition, he told other officers who had arrived what he was finding. By this time, Defendant was again out of the truck. She was holding an infant child, her purse, and a diaper bag. Inquiries by Lieutenant Day prompted policeman Nichols (Nichols) to search Defendant.

**2.** When asked on cross-examination if he initially obtained an identification from the driver, Dillard replied: "I believe I did at that time. I don't recall specifically."

While handling a small purse taken by Nichols from Defendant's larger purse, he "felt hard objects" inside. Believing the "hard objects" might be a knife or gun, Nichols opened the smaller purse. Inside he found marijuana, "roaches," "a small wooden dugout," and other drug paraphernalia. Next, Nichols took the diaper bag from Defendant and searched it. In it he found additional marijuana.

The State charged Defendant with possession of a controlled substance, § 195.211, and first degree child endangerment, § 568.050. Defendant then filed a motion to suppress the marijuana, the drug paraphernalia, $978.79 in cash, and all other evidence seized, directly or indirectly, from the search. The trial court sustained her motion. This appeal followed.

In its first point, the State insists that the trial court erred in sustaining Defendant's motion to suppress evidence because the arresting officer "had reasonable suspicion to detain [Defendant] and the resulting search was a lawful search." The State's argument relies on a line of United States Supreme Court and Missouri appellate court opinions, emanating from *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), that deal with "investigative stops."

The Supreme Court of Missouri stated the investigative stop rule regarding motor vehicles as follows:

> "[T]he Fourth Amendment [is not] offended when a law enforcement officer briefly stops a moving automobile to investigate, founded upon a reasonable suspicion that the occupants are involved in criminal activity, if the suspicion is supported by specific and articulable facts."

*Franklin*, 841 S.W.2d at 641[3] (citing *United States v. Brignoni–Ponce*, 422 U.S. 873, 882, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975)).

In *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), the United States Supreme Court discusses the *Terry* requirement that an officer have "a reasonable suspicion that criminal activity was afoot."

> "The officer, of course must be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch." ' The Fourth Amendment requires 'some minimal level of objective justification' for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means 'a fair probability that contraband or evidence of a crime will be found,' and the level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause.... In evaluating the validity of a stop such as this, we must consider 'the totality of the circumstances—the whole picture.' As we said in *Cortez:*
>
>> 'The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same— and so are law enforcement officers.' 449 U.S. at 418, 101 S.Ct. at 695."

490 U.S. at 7–8, 109 S.Ct. at 1585–86[1,3] 104 L.Ed.2d at 10 (citations omitted).

Here, the record supports the trial court's implicit finding that the investigatory stop was invalid. In responding to the radio dispatch, Dillard only knew that an assault was in progress at apartment C of a ten-unit apartment building. The radio dispatch apparently gave no information about the alleged assailant, the victim, the occupants of the apartment, possible witnesses, or who reported the alleged assault. Nothing in the dispatch indicated that persons implicated in the assault or who might be witnesses had left apartment C or the apartment building, were in flight from the parking lot, or that a motor vehicle of any description was involved. As it was described, the radio message was devoid of anything that would tend to cast suspicion upon this Ford pickup or its occupants.

When Dillard arrived at the main entrance to the apartment house parking lot, he saw "a light blue Ford Ranger ... attempting to leave the area." Although Dillard was in a marked car with emergency lights on when he stopped in the main entrance, the pickup

was not "passing" Dillard's police car nor did Dillard stop his car by the pickup. Dillard explained the situation as follows: "There was—it's kind of a C-shaped drive. There's a second exit out of the parking lot for the apartments and although I was parked in the main one, it [the Ford pickup] was apparently trying to leave through the second one." Dillard conceded that when he saw the pickup, it was not being operated "at a high speed or anything[.]" Nothing about the pickup attracted his attention in any way other than the fact that it was "just leaving" as he arrived. Nevertheless, Dillard yelled for the driver of the pickup to stop. After the second shout, the driver complied. At the suppression hearing, Dillard testified there were two reasons why he stopped the pickup. First, Dillard said he stopped the truck because it was leaving the parking lot as he [Dillard] arrived. Second, Dillard declared that he stopped the pickup because its driver did not stop in response to the arrival of his marked police car, with lights on, at the main entrance to the parking lot. However, Dillard conceded that at the preliminary hearing, he testified that his only reason for stopping the pickup was its "time and location."

The trial court could have looked upon Dillard's belated additional justification for making the stop as calling for a credibility determination about Dillard's articulated reasons for making the stop. Furthermore, the trial court could have viewed Dillard's testimony as inconsistent when he testified that the first thing he did was search the truck to insure his safety but failed to search the vehicle's occupants. An additional inconsistency in Dillard's testimony could be found when he testified that he stopped the truck because of "time and location[,]" i.e., leaving the parking lot of the apartment building within three minutes after a reported assault; yet, Dillard apparently never endeavored to learn if the occupants of the truck were implicated in the assault. When any part of the testimony of a witness can reasonably be

viewed as inaccurate or inconsistent, the usual rule attends and we give deference to the trial court's evaluation of the credibility of witnesses. *See State v. Duke*, 924 S.W.2d 588, 589[3] (Mo.App.1996); *Thurmond v. Director of Revenue*, 759 S.W.2d 898, 899 (Mo. App.1988).

Under these facts and applicable law, the trial judge was justified in finding that Dillard had no more than an "inchoate and unparticularized suspicion or hunch" that Defendant, an occupant of the pickup truck, was involved in criminal activity or that any criminal activity was afoot that implicated the truck or its occupants. *See Sokolow*, 490 U.S. at 7, 109 S.Ct. at 1585[1], 104 L.Ed.2d at 10. Considering the "totality of the circumstances," the evidence supports a finding that Dillard did not have the "requisite minimal level of objective justification" for the stop. *Id.* Thus, all evidence obtained as a result of the stop is inadmissible and the trial court did not err in ordering its suppression. *See Franklin*, 841 S.W.2d at 645; *Milliorn*, 794 S.W.2d at 187.[3]

The judgment of the trial court is affirmed. The cause is remanded for further proceedings or orders not inconsistent with this opinion.

CROW, P.J., and MONTGOMERY, C.J., concur.

---

**3.** The State's reliance on *State v. Rushing*, 935 S.W.2d 30 (Mo.banc 1996) is misplaced. Rushing did not challenge the trial court's findings that the police were justified under *Terry* in stopping; rather, Rushing contended that in seizing a bottle containing cocaine, the detaining officer exceeded the scope of the limited intrusion authorized by *Terry*. *Id.* at 32. As *Rushing* involves a separate issue, it does not aid the State.