**STATE of Missouri, Plaintiff–
Appellant,**

v.

**Steven G. YOUNG, Defendant–
Respondent.**

No. 22668.

Missouri Court of Appeals,
Southern District,
Division Two.

April 19, 1999.

Jeremiah W. (Jay) Nixon, Atty. Gen., Theodore A. Bruce, Asst. Attorney General, Jefferson City, for appellant.

Gary L. Smith, Smith & Jackson, Lebanon, for respondent.

KENNETH W. SHRUM, Judge.

The State brings this interlocutory appeal pursuant to § 547.200[1] charging that the trial court erred in sustaining Steven G. Young's (Defendant's) motion to suppress evidence. The State charged Defendant with felony possession of methamphetamine, misdemeanor possession of marijuana, and misdemeanor possession of drug paraphernalia. Defendant's motion sought suppression of all evidence seized from his person, as well as all evidence seized from a pickup truck in which he was riding before his arrest, on the basis that the State obtained such evidence by unlawful searches and seizures. The trial court sustained Defendant's motion to suppress.

On appeal, the State asserts that evidence discovered in Defendant's wallet was seized pursuant to a reasonable and lawful search of Defendant's person. It argues that the search was reasonable due to "exigent circumstances" and because the searching officer had reason to believe that

---

1. All statutory references are to RSMo 1994 unless otherwise indicated.

Section 547.200, in pertinent part, provides:

"1. An appeal may be taken by the state through the prosecuting ... attorney from any order ... the substantive effect of which results in:

....

"(2) Suppressing evidence...."

there might be a warrant for Defendant's arrest. Alternatively, the State asserts that even if the search of Defendant's person was unlawful, the evidence should be admissible under the "inevitable discovery" doctrine. The State further claims that the search of the pickup in which Defendant had been riding and seizure of evidence therefrom were constitutionally permissible as an incident to the arrest of the driver of the pickup. We affirm the trial court's order.

## FACTS

The only evidence presented at the hearing on Defendant's motion to suppress consisted of testimony by Trooper Scott Mertens of the Missouri State Highway Patrol. His testimony recounted the following.

On February 23, 1997, Trooper Mertens was conducting routine traffic patrol in Lebanon, Laclede County, Missouri. While on patrol, Mertens stopped a pickup truck after observing that the vehicle's dealer license plate was expired. When Mertens approached the driver-side door of the pickup, the driver stepped out of the vehicle. Mertens "[n]oticed some bulging in the [driver's] front pocket" and conducted a pat-down search. He also "smelled alcohol on the subject" and "noticed a bulging in the back pocket." During the pat-down search, Mertens discovered marijuana on the driver. Thereon, Mertens placed the driver under arrest and sat him in the patrol vehicle.

When Mertens asked the driver about the expired dealer plate, the driver "stated it was not his truck and that it was the passenger's truck, and that the passenger's name was Steven Young" (Defendant). The driver also told Mertens that Defendant was "passed out in the passenger side of the vehicle."

Soon thereafter, an "Officer Merrit" arrived to assist Mertens. Merrit told Mertens that there might be a city warrant for Defendant's arrest. Merrit then called and asked the Lebanon Police Department to run a search for outstanding city warrants on "Steven Young." While the Lebanon Police Department was checking for warrants, Mertens, Merrit, and another officer who had arrived after Merrit, approached the passenger-side door of the pickup. Inside the pickup, Defendant "appeared to be unconscious." Mertens "tried to talk to him, wake him up," but Defendant "did not react in any way." Mertens opened the passenger door, and he and the other officers "pulled [Defendant] out of the vehicle" and "laid him on the ground." Mertens testified that upon opening the pickup door, he smelled marijuana.

With Defendant lying unconscious on the ground, Mertens removed Defendant's wallet "to get his identification to run him through our computer system to find out if he had any warrants for his arrest." In so doing, Mertens discovered a "white powder residue" in a small plastic bag in Defendant's wallet. At Mertens' direction, Defendant was then arrested for possession of a controlled substance. Mertens proceeded to search the passenger compartment of the pickup truck, where he allegedly found additional evidence against Defendant. Ultimately, searches for outstanding warrants on Defendant turned up nothing.

Following the presentation of evidence, the trial court granted Defendant's motion to suppress.. This appeal followed.

## DISCUSSION AND DECISION

When a defendant moves to suppress evidence, the State has the burden to show by a preponderance of the evidence that the motion should be overruled. § 542.296.6; *State v. Franklin*, 841 S.W.2d 639, 644 (Mo.banc 1992). On review, this court determines only whether there was sufficient evidence to support the trial court's ruling. *State v. Copeland*, 949 S.W.2d 227, 228 (Mo.App.1997). We will reverse only if the trial court's judgment is clearly erroneous. *State v. Milliorn*, 794

S.W.2d 181, 183[5] (Mo.banc 1990). If the trial court's ruling is plausible in light of the record viewed in its entirety, this court may not reverse the ruling even though convinced it would have weighed the evidence differently had it been sitting as trier of fact. *Id.* at 184. We defer to the trial court's vantage point in assessing the credibility of witnesses and weighing the evidence. *Copeland,* 949 S.W.2d at 228. We are free to disregard evidence and inferences contrary to the trial court's ruling. *Id.*

■ The State's brief contains three arguments. First, the State charges that the trial court erred in suppressing the evidence[2] taken from Defendant's wallet because the search of the wallet was conducted for the limited purpose of positively identifying Defendant, as he was "an unconscious passenger in a vehicle whose driver had been arrested and there was a reasonable suspicion to believe a warrant for [Defendant's] arrest was outstanding." The State contends that Defendant's condition, i.e., "passed out," together with the officers' belief that there might be a warrant for Defendant's arrest justified Mertens' "limited intrusion to locate identification."

■ "The unvarying command of the Fourth Amendment is that searches and seizures be reasonable, but what is reasonable depends upon the context within which a search takes place." *State v. Gilpin,* 836 S.W.2d 49, 53 (Mo.App.1992). The Fourth Amendment only protects against unreasonable searches and seizures. *State v. Wiley,* 522 S.W.2d 281, 294 (Mo.banc 1975). Consequently, there has developed a body of law, under the heading "exigent circumstances," which holds that there need be no warrant as a predicate to a search if a swift response is indicated by the circumstances. *Id.* "A medical emergency ... is a variant of the exigent circumstances doctrine and will support a search by the governmental actor of the stricken person's ... wallet without a warrant." *Gilpin,* 836 S.W.2d at 53[4].

Missouri courts have often been reluctant, however, to apply the doctrine of exigent circumstances as a justification for a warrantless search. *Wiley,* 522 S.W.2d at 295. As explained by the *Gilpin* court:

> "The mere claim of exigency ... does not suffice. The scope of any exception to the warrant requirement is limited by a real exigency [including] the immediate need to assist in the protection of human life. *The warrantless ... intrusion may not be the pretext for search or arrest . ...* The burden is on the prosecution to show that under the circumstances of the case such an exigent intrusion was necessary."

836 S.W.2d at 53 (emphasis added) (citations omitted).

Here, there is no evidence that Mertens' search of Defendant's wallet was prompted by a good faith belief that this was a medical emergency. Likewise, there is no evidence that Mertens was looking for any record of Defendant's medical history or names of relatives to contact. On the contrary, Mertens clearly stated he was not alarmed by Defendant's unconscious state, that he did not call for medical help, and that his search of Defendant was not motivated by concerns for Defendant's wellbeing. Mertens testified that his only purpose in looking through Defendant's wallet was to obtain Defendant's identification in order to ascertain his date of birth and social security number, which would make it easier to search for outstanding warrants.

Further diminishing the reasonableness of Mertens' search of Defendant is Mertens' testimony that Defendant had already been identified before the search of his person. Mertens stated that the driver

---

**2.** In its brief, the State represents to us that the evidence discovered in Defendant's wallet was methamphetamine, but it adduced no evidence to that effect at the suppression hearing.

of the pickup identified the passenger as "Steven Young" (Defendant). Mertens also testified that Officer Merrit knew and identified Defendant as Steven Young and told Mertens that the City of Lebanon might have an outstanding warrant for Defendant.

Furthermore, Mertens testified that the Lebanon Police Department kept the city's warrants on "a file card" and that the Lebanon Police Department "presumably" would have Defendant's license number and date of birth on file. Mertens then conceded he could have obtained this information from the Lebanon Police Department but chose not to do so.

Under these circumstances, we cannot conclude that the trial court's decision to suppress the evidence found in Defendant's wallet was clearly erroneous. The State has failed to demonstrate the existence of any exigency that might otherwise justify Mertens' warrantless search of Defendant.

█ We skip for a moment the State's second argument to address its third argument, in which it claims that even if the search of Defendant's wallet was unlawful, the trial court erred in suppressing the evidence seized therefrom because it was admissible under the inevitable discovery doctrine.

█ Our supreme court first approved the "inevitable discovery" doctrine in *State v. Butler*, 676 S.W.2d 809 (Mo.banc 1984). Under that doctrine, evidence discovered via an unlawful search will nevertheless be admitted if law enforcement personnel ultimately or inevitably would have discovered the evidence. *Milliorn*, 794 S.W.2d at 184[8]. To invoke the inevitable discovery exception to the exclusionary rule, the State must establish by a preponderance of the evidence that (1) certain standard, proper, and predictable procedures would have been utilized in the case, and (2) those procedures inevitably would have led to discovery of the challenged evidence. *Id.* at 186–87.

The State argues that the inevitable discovery doctrine can be invoked here on one of two bases. First, the State contends that even if Defendant had not been arrested for possession of the substance in his wallet, he would have been arrested for possession of marijuana and drug paraphernalia, which they allege was found in the pickup. As a consequence of such an arrest, Defendant would have been subjected to a lawful inventory search when booked into jail. Continuing, the State argues the "white powder residue" would have been discovered during the inventory search and would have been lawfully seized. The State concludes that because the substance would inevitably have been discovered during a inventory search pursuant to a lawful arrest, it should be admissible. Under other circumstances, we might agree. *See, e.g., State v. Ferguson,* 678 S.W.2d 873, 877 (Mo.App.1984) (citing *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983)); *State v. Thompson,* 663 S.W.2d 253, 255 (Mo.App. 1983).

Inexplicably, however, the State failed to adduce any evidence regarding what contraband, if any, was discovered and seized during the search of the pickup. The only marijuana about which Mertens testified was that possessed by the driver of the pickup. Mertens never mentioned having found *any* drug paraphernalia. Thus, the State failed to establish by a preponderance of evidence any valid basis for the lawful arrest of Defendant.

Moreover, Mertens never indicated that he did arrest or would have arrested Defendant on any charge other than possession of the substance in Defendant's wallet. When asked what Defendant was arrested for, Mertens responded, "For possessing controlled substance." Because the record is devoid of evidence of any other contraband, the only conclusion that can be drawn from Mertens' statement is that Defendant was arrested for possession of the "white powder residue" found in his wallet, not possession of marijuana or drug

paraphernalia. The trial court concluded the same, stating that Mertens "arrested [Defendant] for what [Mertens] found in the wallet when he searched [Defendant] without consent or a warrant." Absent evidence that the officers could and would have lawfully arrested Defendant on some other charge, we conclude that the State failed to show by a preponderance of evidence that police "inevitably" would have discovered the substance in Defendant's wallet during a lawful inventory search conducted as an incident to a valid arrest of Defendant.

■ Second, the State contends that had Defendant not been arrested, he nevertheless would have been taken into protective custody and placed in jail under § 67.315 due to his unconscious state. Section 67.315 authorizes a "peace officer" to take "[a] person who appears to be intoxicated or incapacitated" to "any available treatment service, or to any other appropriate local facility, which may if necessary include a jail, for custody not to exceed twelve hours." The statute does not prescribe any "standard procedures" to be followed. On the subject of protective custody, Mertens testified as follows:

"Q [To Trooper Mertens].... Do you have a standard procedure in dealing with subjects who are unconscious?"

"A Not sure if there's a standard procedure, but safety reasons I would not be able to leave [Defendant] there in the vehicle.... He would have been taken, if we were unable to awake him he would have been taken into a 12 hour protective custody and placed in the Laclede County Jail until the 12 hours were up and able to leave on his own accord."

"Q How would he be placed into protective custody?"

"A Do an incident report and turn him over to the Laclede County Sheriff's Department and they would put a 12 hour hold on the subject, unless he was able to leave."

"Q Would you be responsible for the initial booking procedures at the jail?"

"A I would not book him in to jail, but I would release him, tell the jailer what the charges or what hold is on the subject."

"Q And how would you identify the subject?"

"A By obtaining his license or by word of mouth, which is name, date of birth."

"Q So if he had not awakened, you would have taken him into protective custody?"

"A Yes, I would have."

"Q And as a procedure in that protective custody you may have searched his person for identification?"

"A Yes, I would have."

Based on this evidence, the State argues that the substance in Defendant's wallet inevitably would have been lawfully discovered because even if Defendant would not have been arrested, he would have been taken into protective custody and delivered to the Laclede County Jail where he would have been subjected to an inventory search.

This argument is fatally flawed in two respects. First, the State presented no evidence of "routine inventory procedures" in § 67.315 custody situations as required by *Milliorn*, 794 S.W.2d at 187. Mertens only testified as to what *he* would have done here, not what routine procedures would entail. Moreover, considering Mertens' testimony that he would not have "booked" Defendant into jail, the trial court could have concluded Mertens was not competent to testify as to "routine inventory procedures" employed by the Laclede County Jail for persons held under § 67.315. Consequently, there is no evidence to support a finding that certain standard and predictable procedures would have been employed here and inevitably would have led to discovery of the substance in Defendant's wallet. *See Milliorn*, 794 S.W.2d at 187.

Second, Mertens neither took Defendant into protective custody nor unequivocally

stated that he would have done so if Defendant had not been arrested. Mertens stated that Defendant would have been taken into protective custody "if we were unable to awake him." The evidence showed, however, that Defendant regained consciousness at some point. Mertens testified, "I got his name and date of birth after he had woke up." Mertens' testimony does not reveal precisely when Defendant regained consciousness. The trial court was free to draw the inference that Defendant woke up before Mertens would otherwise have taken him into protective custody. Moreover, there is no evidence that Defendant appeared to be intoxicated or otherwise incapacitated after he regained consciousness. For all these reasons, we conclude the State failed to prove by a preponderance of evidence that discovery of the substance on Defendant's person was inevitable. *Milliorn,* 794 S.W.2d at 187.

Absent evidence showing the inevitability of an inventory search pursuant to a lawful arrest or custody under § 67.315, the inevitable discovery doctrine cannot justify the admission of the evidence here. *Milliorn,* 794 S.W.2d at 184. We deny the State's argument to the contrary.

Finally, we turn to the State's second argument. There, the State asserts that Mertens' search of the passenger compartment of the pickup was lawful and reasonable both as an incident to the arrest of the driver and because Mertens had probable cause to search. The State therefore contends that evidence seized from the pickup should be admissible. We conclude that even if Mertens' search of the passenger compartment of the pickup was reasonable, that fact is inconsequential in light of the lack of evidence adduced by the State at the suppression hearing. For purposes of our analysis of this argument, we presume—without deciding—that Mertens' search of the passenger compartment of the pickup was reasonable and lawful.

As already mentioned, Mertens did not at any point in his testimony state what contraband or evidence, if any, he seized from the pickup. Likewise, he did not testify where inside the pickup he may have found any such evidence. While these omissions do not render Mertens' search unreasonable, they are fatal to the State's argument.

Above, we concluded that the search of Defendant's person was unreasonable, warranting the suppression of evidence seized from Defendant's person. The trial court concluded, and we are unable to disagree, that Defendant was arrested "for what [Mertens] found in the wallet when he searched [Defendant] without consent or a warrant." Because the trial court properly suppressed the evidence on which Defendant's arrest was based and because we know of no other admissible evidence that would justify Defendant's arrest, we cannot conclude that it was clearly erroneous to suppress any evidence that might have been seized from the pickup.

The trial court's order suppressing the evidence is affirmed.

GARRISON, C.J., BARNEY, J., concur.